The STATE, ex rel. FRAYSIER, Appellant,

v.

BEXLEY CITY SCHOOL DISTRICT BOARD OF EDUCATION, Appellee.

[Cite as *State, ex rel. Fraysier, v. Bexley City School Dist. Bd. of Edn.* (1989), 65 Ohio App.3d 245.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–392.

Decided Nov. 7, 1989.

*Cloppert, Portman, Sauter, Latanick & Foley* and *Frederic A. Portman,* for appellant.

*Squire, Sanders & Dempsey, Jeffery P. Hopkins, David J. Young* and *James S. Savage,* for appellee.

———

PEGGY BRYANT, Judge.

Relator appeals from a judgment of the Franklin County Common Pleas Court not only denying relator's request for a writ of mandamus to compel respondent, Bexley City School District Board of Education to issue relator a continuing contract, but also declaring relator not entitled to a continuing contract. Relator's sole assignment of error states:

"The trial court erred when it found that relator-appellant was not entitled to a continuing contract commencing with the 1983–84 school year."

In April 1983, relator was a teacher for Bexley City Schools. On April 18, the board offered to reemploy relator for the 1983–1984 school year pursuant to a one-year unconditional limited contract. On Friday, April 29, the Superintendent of Bexley City Schools, Loren Thompson, received a letter from relator informing Thompson that relator was eligible for a continuing, rather than limited, contract. Thompson promptly called the respondent, the Bexley Board of Education, into emergency session that day. Thompson recommended that the board offer relator a conditional limited contract under R.C. 3319.11 instead of a continuing contract, and respondent accepted Thompson's recommendation. Thompson gave a copy of the recommendation to Christopher Essman, the treasurer of the school board, who left the recommendation attached to the front door of relator's residence at about 5:30 p.m. on April 29. On Saturday, April 30, Essman left notice of respondent's offer of a limited contract at relator's door. Relator, who had spent the weekend with friends, did not read the notices until he returned home on Sunday, May 1.

On August 16, 1983, relator filed suit in Franklin County Common Pleas Court, seeking a declaratory judgment and a writ of mandamus. On June 26, 1984, the trial court granted summary judgment in relator's favor, but it vacated that order on July 24, 1984. Relator appealed the latter decision to this court, which affirmed the trial court's vacating judgment and remanded for consideration the issue of deliberate evasion of notice. See *State, ex. rel. Frasier [sic], v. Bexley City School Dist. Bd. of Edn.* (Apr. 25, 1985), Franklin App. No. 84AP–743, unreported. On March 22, 1989, the trial court on remand found for respondent. Relator now appeals to this court.

Relator first argues that he was entitled to a continuing contract because of the combination of two factors: (1) the board hired him pursuant to an unconditional limited contract for the 1983–1984 school year on April 18 and (2) relator obtained a professional certificate before the start of the 1983–

1984 year. Relator bases his claim upon language in *State, ex rel. Peet, v. Bd. of Edn.* (1981), 66 Ohio St.2d 287, 20 O.O.3d 275, 421 N.E.2d 861. The *Peet* court stated that a teacher is eligible for a continuing contract:

" * * * [I]f he holds a professional, permanent or life certificate in any area of teaching, which certificate is effective by the starting date of any contract to be issued. *If a board has issued an unconditional limited contract to such a teacher, that teacher is ordinarily entitled to a writ of mandamus compelling the issuance of a continuing contract.*" (Emphasis added.) *Id.* at 289, 20 O.O.3d at 276, 421 N.E.2d at 863.

Respondent argues that *Peet* is factually distinguishable. Respondent's argument is well taken, since the teacher in *Peet* had obtained his professional certificate and had filed it with the board *before* the board offered him an unconditional limited contract. *Id.* at 287, 20 O.O.3d at 275, 421 N.E.2d at 862. Here, relator had neither obtained nor filed his certificate before respondent offered him a contract on April 18.

The factual distinction is important because of the structure of Ohio's teacher contract statutes. R.C. 3319.08 provides that "[c]ontracts for the employment of teachers shall be of two types, limited contracts and continuing contracts." The maximum length of a limited contract for a teacher is five years. R.C. 3319.08(C). In contrast, a continuing contract does not have a fixed duration and essentially "confers tenure within a school system." *Tate v. Westerville Bd. of Edn.* (1983), 4 Ohio St.3d 206, 207, 4 OBR 524, 525, 448 N.E.2d 144, 146. Teachers who have reached a certain level of professional accomplishment are eligible for "continuing contract status." R.C. 3319.11. A teacher's eligibility, though, does not guarantee that he will actually receive a continuing contract. The school superintendent must first recommend the teacher to the school board, which in turn may refuse to issue a continuing contract by a three-fourth's vote. R.C. 3319.11.

The Supreme Court in *Peet* found that this formal recommendation procedure is not necessary when a school board rehires a teacher to an unconditional contract while the board is aware of the teacher's continuing contract eligibility. Because a board in that situation has rehired the teacher with the awareness of the teacher's eligibility, the board has exercised its rights under R.C. 3319.11 to choose whether to rehire an eligible teacher. In contrast, the application of *Peet* to cases like the present, in which teachers become eligible *after* a limited contract is offered, would remove in those cases the school board's statutory right to choose whether to rehire eligible teachers. Thus, we conclude that extending the holding of *Peet* to cases like the present is not supported by the underlying statutory scheme. We note that other courts have interpreted *Peet* similarly. See *State, ex rel. Spires, v. Maceyko* (Apr.

27, 1988), Morrow App. No. CA–673, unreported, 1988 WL 42609; *Seiler v. Bd. of Edn.* (Jan. 25, 1985), Van Wert App. No. 15–83–23, unreported, 1985 WL 9067; *Pascoe v. Bd. of Edn.* (Feb. 18, 1983), Erie App. No. E–82–32, unreported, 1983 WL 13842.

In short, the mere issuance of an unconditional limited contract, under the circumstances of this case, did not require respondent to issue relator a continuing contract, unless respondent was aware of relator's eligibility. Relator argues that respondent was, in fact, aware of his eligibility in that Superintendent Thompson's signing of his application for a certificate on April 8 "clearly and unequivocally" put the board on notice "that the teacher would be receiving a professional certificate." Relator's argument is not well taken, since relator had not obtained his professional certificate by April 18, the date respondent offered relator an unconditional limited contract. Although relator is correct to the extent that a certificate does not have to be on file with the board for the board to be aware of it, *Woodrum v. Bd. of Edn.* (1981), 66 Ohio St.2d 284, 286, 20 O.O.3d 273, 421 N.E.2d 859, nothing in the record indicates that the filing of an application for a certificate would make a school board aware of a teacher's eligibility. Relator introduced no evidence that the filing of relator's application with the State Board of Education would have automatically resulted in a professional certificate, nor did relator establish that the school board should have known the effect of relator's application. In sum, we find that the evidence supports the conclusion that respondent was not aware of relator's eligibility at the time it offered relator an unconditional limited contract.

Alternatively, relator argues that he was entitled to a continuing contract because respondent failed to notify him of its decision not to offer him a continuing contract.[1]

When notified of relator's eligibility for a continuing contract, respondent, on April 29, offered him a limited contract with reasons directed at relator's professional improvement. The granting of a limited conditional contract, like the one granted in the present case on April 29, is one of the

---

1. Respondent contends that the failure to notify issue is the *only* issue in the case because of the "law of the case" doctrine. See *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 3, 11 OBR 1, 2, 462 N.E.2d 410, 412 (" * * * [T]he decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case * * *."). Here, our decision of April 25, 1985 remanded the case to the trial court for a determination of the failure to notify issue. Respondent asserts that, by remanding solely on the notice issue, we implicitly decided and rejected relator's arguments regarding the effect of his possessing or applying for a professional certificate. However, we need not decide whether the doctrine of the law of the case applies in this context, since we decide the professional certificate arguments in respondent's favor in this opinion.

board's options under R.C. 3319.11, and is in lieu of offering the eligible teacher a continuing contract. *State, ex rel. Lee, v. Bellefontaine Bd. of Edn.* (1985), 17 Ohio St.3d 124, 126, 17 OBR 271, 272, 477 N.E.2d 1135, 1137. The board, though, must notify the teacher of its action and the superintendent must notify the teacher of his recommendation of a limited conditional contract by April 30. If the teacher does not receive the notices by April 30, the teacher is automatically rehired under a continuing contract. R.C. 3319.-11; *Lee, supra.*

The notice to the teacher must be "actual notice." *State, ex rel. Curry, v. Bd. of Edn.* (1978), 54 Ohio St.2d 67, 69, 8 O.O.3d 75, 76, 375 N.E.2d 48, 49. Here, relator did not receive actual notice until May 1. Nevertheless, an exception to the actual notice requirement exists " * * * in situations where a teacher is shown to have deliberately evaded receipt of the written notice of non-reemployment. * * * " *Id.* at 70, 8 O.O.3d at 77, 375 N.E.2d at 50.

In the present case, relator disputes the trial court's finding that he deliberately evaded notice. We conclude that the evidence supports the trial court's decision. Relator testified that he was aware at the time that the board had to notify him of his status by April 30. Relator also testified that he signed a letter to the superintendent that asked for "prompt attention" to his continuing contract demand. Van Ludy, a consultant for the Ohio Education Association, wrote the letter for relator and relator received the letter on April 29. The letter was not delivered to the superintendent until that afternoon. Relator did not try to deliver the letter himself even though he had two breaks during the day; instead, he gave it to a person named Connie Wagner to deliver. Relator stated that he left "about 3:15" that day, while Wagner's appointment with Superintendent Thompson was scheduled for 3:30.

After leaving school, relator went home, but he stayed only "ten or 15 minutes" because he and his wife "wanted to get to the track meet as quickly as possible." The track meet, in which relator's daughter was competing, was in Licking County, Ohio. After the track meet, relator and his family spent the weekend with friends in Westerville, Ohio. Relator did not tell anyone he would be in Westerville over the weekend.

In short, the evidence allowed the trial court to conclude that relator knew that respondent would have to notify him sometime between 3:15 on Friday, April 29, and Sunday, May 1, yet relator apparently rendered himself incommunicado during that time. The trial court properly could conclude from this evidence that respondent deliberately evaded notice.

Based on the foregoing, we overrule relator's sole assignment of error and affirm the judgment of the trial court.

*Judgment affirmed.*

REILLY and BOWMAN, JJ., concur.