[This opinion has been published in *Ohio Official Reports* at 75 Ohio St.3d 60.]

HARA, APPELLANT AND CROSS-APPELLEE, *v.* MONTGOMERY COUNTY JOINT VOCATIONAL SCHOOL DISTRICT, APPELLEE AND CROSS-APPELLANT.

[Cite as *Hara v. Montgomery Cty. Joint Vocational School Dist.*, 1996-Ohio-131.]

*Schools—Teachers—Supplemental contract for additional duties improperly reduced, when—Term of automatically renewed supplemental contract—Former R.C. 3119.11, construed and applied.*

(Nos. 94-2684 and 95-49—Submitted January 9, 1996—Decided March 4, 1996.)

APPEAL and CROSS-APPEAL from and CERTIFIED by the Court of Appeals for Montgomery County, Nos. 13636 and 13937.

———————————

{¶ 1} Teachers are employed pursuant to a contract between the teacher and a board of education. R.C. 3319.08. Such a contract is either continuing, one that remains in effect until the teacher resigns, retires or is terminated, or limited, one with a term not to exceed five years. *Id.* Teachers and boards of education may also enter into supplemental contracts, also called extended service contracts, which cover duties, for example, coaching, performed by the teacher in addition to the teacher's regular duties. *Id.* Supplemental contracts are limited contracts. *Id.* All of the above-mentioned contracts must be in writing. *Id.*

{¶ 2} In May 1971, Shirlee Hara, a guidance counselor, and the Montgomery County Joint Vocational School District Board of Education ("board") entered into a one-year limited contract for the standard one-hundred-eighty-five-day work year. In April 1972, Hara and the board entered into a one-year limited contract on a two-hundred-five-day basis consisting of a one-hundred-eighty-five-day limited contract and a twenty-day supplemental contract. The next contract between Hara and the board was a two-year limited contract on a two-

hundred-fifteen-day basis.  In the spring of 1975, Hara and the board entered into a continuing contract.  From that time forward, the supplemental contracts between Hara and the board were oral and had no specified term.

{¶ 3} From the 1976-1977 school year until the 1981-1982 school year, Hara's supplemental contract with the board was for fifty-five days.  In the spring of 1981, Hara's supervisor, James Deeter, informed her that her supplemental contract was being reduced to forty days.  Hara did not receive written notification of this reduction.  She noticed that her pay had been adjusted to reflect the reduction and accordingly worked only two hundred twenty-five days, one hundred eighty-five days to fulfill her continuing contract obligation and forty days to fulfill her supplemental contract obligation.

{¶ 4} Hara continued to work, and to be paid, as if she had a forty-day supplemental contract through the 1986-1987 school year.  Prior to the beginning of the 1987-1988 school year, Deeter informed Hara that her supplemental contract was being reduced to twenty days.  Again, Hara did not receive written notification of this reduction.

{¶ 5} In late 1987 or early 1988, Hara filed a grievance complaining that the reduction of her supplemental contract was improper.  The board notified Hara in writing in April 1988 that it did not intend to reemploy her under the supplemental contract.  In December 1988, Hara filed this declaratory judgment action in the Montgomery County Common Pleas Court.  In June 1992, the referee issued her Report and Recommendation finding that Hara's supplemental contracts for the school years 1981-1982 through 1990-1991 had been improperly reduced.  Moreover, the referee concluded that when in April 1981 and April 1986, the board failed to provide timely written notice of its intention not to reemploy her, her supplemental contract was automatically renewed under former R.C. 3119.11 for five years, not merely for the succeeding year.  However, the referee found that Hara had unreasonably delayed asserting her claim, thereby prejudicing the board,

and therefore she was entitled to back pay only for school years 1987-1988 through 1990-1991.

{¶ 6} On August 31, 1992, the trial court adopted the Report and Recommendation issued by the referee with a minor modification not relevant here. The trial court agreed that the doctrine of laches was applicable in this case. In October 1992, the trial court entered judgment for Hara in the amount of $30,999.90 plus interest and penalties.

{¶ 7} Thereafter, the case embarked on a convoluted procedural journey that culminated when the Court of Appeals for Montgomery County upheld the trial court's finding that Hara was entitled to back pay. However, the court of appeals determined that the supplemental contract could only be renewed for one-year increments and therefore reversed the part of the trial court's decision that found that the supplemental contract could be renewed for five-year increments. Accordingly, the cause was remanded to the trial court so the award of back pay could be recomputed. The court upheld the trial court's application of the doctrine of laches.

{¶ 8} Finding its judgment to be in conflict with the judgment of the Court of Appeals for Holmes County in *Swaykus v. E. Holmes Local School Dist. Bd. of Edn.* (Feb. 7, 1983), Holmes App. No. CA-338, unreported, the court of appeals entered an order certifying a conflict. The cause is now before this court upon our determination that a conflict exists (case No. 95-49). The cause is also before this court pursuant to the allowance of a discretionary appeal and cross-appeal (case No. 94-2684).

_____

*Schnorf & Schnorf Co., L.P.A.,* and *Christopher F. Parker,* for appellant and cross-appellee.

*Young, Pryor, Lynn & Jerardi* and *Larry A. Smith,* for appellee and cross-appellant.

_____

**WRIGHT, J.**

{¶ 9} The central issue in this case is whether the supplemental contract between Hara and the board was automatically renewed under former R.C. 3319.11 for a period of five years or for a period of one year from the time she received her continuing contract (1975).[1] The court of appeals held that the initial automatic renewal of the supplemental contract (from the time Hara and the board entered into a continuing contract) was for a five-year term. The court of appeals also held that the supplemental contract was automatically renewed for a term of one year in each subsequent year until the board notified Hara in writing that her supplemental contract was not being renewed. We agree in part and reverse only that portion of the opinion of the court of appeals that held that the initial renewal of the supplemental contract was for a term of five years. We affirm that portion of the court of appeals' opinion that upheld the trial court's application of the doctrine of laches.

{¶ 10} The statutory framework which we are called upon to interpret is cloudy at best. Very little of the language of R.C. Chapter 3319 explicitly addresses supplemental contracts between teachers and boards of education. Consequently, we have looked for guidance wherever limited contracts are discussed in the statute because supplemental contracts are a subset of limited contracts. R.C. 3319.08.

{¶ 11} This case arose because the board granted Hara a continuing contract for the 1975-1976 school year without reducing Hara's hitherto accompanying supplemental contract to writing.[2] Even so, "the failure of such parties to execute a written contract shall not void" the accompanying contract. R.C. 3319.08.

_____

1. Effective July 1, 1989, supplemental written contracts were excluded from the automatic renewal provisions of R.C. 3319.11. R.C. 3319.11(I), 142 Ohio Laws, Part II, 3363.

2. There is no dispute about the continuing contract. Both Hara and the board have continued to perform under the terms of the continuing contract.

Accordingly, we find that under former R.C. 3319.11, Hara's supplemental contract was automatically renewed for the succeeding year under the same terms and conditions as the previous supplemental contract. *Tate v. Westerville City Bd. of Edn.* (1983), 4 Ohio St.3d 206, 4 OBR 524, 448 N.E.2d 144, syllabus. We further find that her supplemental contract was automatically renewed at the end of each contract for the succeeding year until April 1988 when Hara was notified in writing that her supplemental contract was not being renewed.

{¶ 12} During the term of the first unwritten supplemental contract (1975-1976), Hara worked and was paid for thirty days of extended service. For the next five years, she worked and was paid for fifty-five days of extended service.[3] Thus, though the contract was not in writing and therefore not in compliance with statutory law, both parties complied with the terms of the contract as they understood them through the 1980-1981 school year.

{¶ 13} In the spring of 1981, the board decreased Hara's supplemental contract to forty days. It effected this contract modification without providing written notice to Hara as required by R.C. 3319.08. Hara's pay was reduced accordingly and she reduced her work days accordingly, but her acquiesence in this improper modification is beside the point. The board attempted to decrease Hara's salary and duties without complying with the statutory requirements. Such reductions are specifically forbidden by the statute; accordingly, the attempted modification was without effect and each of the subsequent supplemental contracts was for fifty-five days of extended service. R.C. 3319.08.[4]

{¶ 14} We turn now to the doctrine of laches, which the board asserts as an affirmative defense. Whether the four elements of laches are applicable is

---

3. This change in the supplemental contract was effected without a writing.

4. It is also immaterial that Hara accepted the earlier modification that increased the days of work governed by the supplemental contract. R.C. 3319.08 provides that duties and compensation may be increased during the term of a contract; they may not, however, be diminished.

ultimately a factual determination.  See *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections* (1995), 74 Ohio St.3d 143, 656 N.E.2d 1277; *State ex rel. Meyers v. Columbus* (1995), 71 Ohio St.3d 603, 646 N.E.2d 173; *State ex rel. Cater v. N. Olmsted* (1994), 69 Ohio St.3d 315, 631 N.E.2d 1048; *Stevens v. Natl. City Bank* (1989), 45 Ohio St.3d 276, 285, 544 N.E.2d 612, 620-621.  Both fact finders, the referee and the trial court,  found laches to be applicable.  Their findings were affirmed by the court of appeals.  We find no facts in the record that justify overturning that decision.

{¶ 15} We affirm in part and reverse in part and remand this cause to the trial court for a recomputation of the award of back pay in accordance with this decision.

*Judgment affirmed in part*

*and reversed in part.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

————————————